EXHIBIT "C"

FILED
2005 May-25 PM 03:07
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
JASPER DIVISION

BRENDA SUE LANDRUM,                    ]
                                       ]
        Plaintiff(s),                  ]
                                       ]
vs.                                    ] CV05-CO-01055-J
                                       ]
MERCK & COMPANY, INC.,                 ]
                                       ]
        Defendant(s).                  ]

ORDER

In accordance with the Memorandum of opinion entered contemporaneously herewith, this action is hereby REMANDED to the Circuit Court of Walker County, Alabama.

Done this 25th day of May 2005.

_____
L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE
130122



PLAINTIFF'S
EXHIBIT
"C"

FILED
2005 May-25 PM 03:05
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
JASPER DIVISION



BRENDA SUE LANDRUM,           ]
                              ]
        Plaintiff(s),         ]
                              ]
vs.                           ] CV05-CO-01055-J
                              ]
MERCK & COMPANY, INC.,        ]
                              ]
        Defendant(s).         ]

OPIONION

On May 23, 2005, defendant Merck & Co., Inc., removed this action from the Circuit Court of Walker County, Alabama. Merck contends this court has diversity jurisdiction because the amount in controversy exceeds $75,000, exclusive of costs and interest, and the alleged Alabama citizenship of the remaining defendants, former Merck sales representatives, must be ignored for removal purposes since these defendants are fraudulently joined. [Doc. 1]. Merck included affidavits from three sales representatives denying the allegations of the complaint. Id. The sales representative defendants, Robert Wall, Gary Harlan, Angela Finch, Matthew King, Patricia Aiken, and Sonya Coley, filed motions to dismiss the claims against them

simultaneously with Merck's removal. [Doc. 3-8]. Merck also filed a motion to stay all proceedings in this action pending transfer by the Judicial Panel on Multidistrict Litigation to In re Vioxx Products Liability Litigation (MDL-1657). [Doc. 10].

The plaintiff, Brendan Sue Landrum, responded with an "Emergency Motion to Remand" on May 24, 2005, arguing that federal courts in this district and elsewhere in Alabama have repeatedly held that in-state pharmaceutical sales representatives are not fraudulently joined. [Doc. 12]. In her complaint filed in the Circuit Court of Walker County, Alabama, Plaintiff alleged that the sales representative defendants negligently, recklessly, intentionally and fraudulently made material representations that Vioxx was safe and effective. [Doc. 1, Ex. A]. In Count 1 of her complaint, Plaintiff alleged a claim under the Alabama Extended Manufacturer's Liability Doctrine (AEMLD). In remaining counts, she claims failure to warn (Count 2), breach of the warranty of merchantability (Count 3), negligence (Count 4), wantonness (Count 5), fraudulent misrepresentation (Count 6), and fraudulent suppression (Count 7). The claims, facts, and arguments asserted in this case are nearly identical to

those in *Marshand v. Wyeth, et al.*, CV-03-CO-319 5-W (N.D. Ala. 2004). The differences are not material to the consideration of the pending motions in this case. The court by reference adopts the analysis set forth in that opinion.

The court is of the opinion that it does not have diversity jurisdiction in this action. This case will be remanded to the Circuit Court of Walker County, Alabama. A separate order will be entered.

Done this 25th day of May 2005.

L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE
130122



ENTERED
CLERK, U.S. DISTRICT COURT

APR 25 2005

CENTRAL DISTRICT OF CALIFORNIA
BY _____ DEPUTY

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

PRIORITY SEND
Ent S56

**CIVIL MINUTES — GENERAL**

Case No.    **SACV 05-177-JFW (MANx)**                    Date: April 22, 2005

Title:    THEODORE M. SOKARDA, et al. -v- MERCK & COMPANY, INC., et al.

**DOCKET ENTRY**

**PRESENT:**

HONORABLE JOHN F. WALTER, UNITED STATES DISTRICT JUDGE

Shannon Reilly                        None Present
Courtroom Deputy                      Court Reporter

**ATTORNEYS PRESENT FOR PLAINTIFFS:**        **ATTORNEYS PRESENT FOR DEFENDANTS:**
None                                          None

PROCEEDINGS (IN CHAMBERS):        **ORDER GRANTING DEFENDANT'S *EX PARTE*
APPLICATION TO VACATE ORDER TO REMAND OR,
ALTERNATIVELY, TO GRANT LEAVE TO AMEND
NOTICE OF REMOVAL [filed 3/31/05; Docket No. 15];**

**ORDER VACATING MARCH 24, 2005 ORDER
REMANDING ACTION [Docket No. 7];**

**ORDER GRANTING PLAINTIFFS' MOTION FOR LEAVE
TO AMEND COMPLAINT [filed 3/25/05; Docket No. 8];**

**ORDER GRANTING PLAINTIFFS' MOTION TO
REMAND TO STATE COURT PURSUANT TO 28 U.S.C.
§ 1447(e); 28 U.S.C. § 1447(c) [filed 3/25/05;
Docket No. 10]**

**ORDER REMANDING ACTION TO ORANGE COUNTY
SUPERIOR COURT;**

**ORDER DENYING DEFENDANT'S MOTION TO STAY
ALL PROCEEDINGS PENDING TRANSFER DECISION
BY THE JUDICIAL PANEL ON MULTIDISTRICT
LITIGATION AS MOOT [filed 3/29/05; Docket No. 20]**

THIS CONSTITUTES NOTICE OF ENTRY
AS REQUIRED BY FRCP, RULE 77(d)

DOCKETED ON CM

APR 26 2005

BY _____ 010

Page 1 of 6        Initials of Deputy Clerk sr

On January 14, 2005, Plaintiffs Theodore M. Sokarda and Patricia A. Sokarda (collectively "Plaintiffs") filed this action in Orange County Superior Court against Merck & Company, Inc, ("Defendant"). On February 23, 2005, Defendant filed a Notice of Removal of Action Under 28 U.S.C. § 1441(b) ("Notice of Removal") based on diversity of citizenship pursuant to 28 U.S.C. § 1332. On March 24, 2005, this Court issued an Order remanding this case to Orange County Superior Court based on a procedural defect and stayed the Remand Order until April 4, 2005 to give Plaintiffs an opportunity to waive the procedural defect and elect to remain in federal court.

On March 25, 2005, Plaintiffs filed a Motion for Leave to Amend Complaint and a Motion to Remand to State Court Pursuant to 28 U.S.C. § 1447(e); 28 U.S.C. § 1447(c) and set the hearing on the Motions for April 25, 2005. On April 4, 2005, in light of the Motions filed by Plaintiffs, the Court continued its Order staying the remand of this action from April 4, 2005 to April 25, 2005. On April 11, 2005, Defendant filed its Oppositions to Plaintiffs' Motions. On April 19, 2005, Plaintiffs filed their Replies.

On March 29, 2005, Defendant filed a Motion to Stay All Proceedings Pending Transfer Decision by the Judicial Panel on Multidistrict Litigation. Plaintiffs did not file an Opposition to Defendant's Motion. On March 31, 2005, Defendant filed an *ex parte* Application to Vacate Order to Remand or, Alternatively, to Grant Leave to Amend Notice of Removal. On April 1, 2005, Plaintiffs filed their Opposition to the *ex parte* Application. On April 5, 2005, Defendant filed a Reply in support of its *ex parte* Application.

Pursuant to Rule 78 of the Federal Rules of Civil Procedure and Local Rule 7-15, the Court finds that the foregoing matters are appropriate for decision without oral argument. The hearing calendared for April 25, 2005 is hereby vacated and the matters taken off calendar. After considering the moving, opposing, and reply papers and the arguments therein, the Court rules as follows:

I.    Defendant's *ex parte* Application to Vacate March 24, 2005 Remand Order

On March 24, 2005, this Court issued an Order remanding this case to Orange County Superior Court on the grounds that Defendant had failed to provide the Court with the date that Defendant was served with a copy of the summons and Complaint and therefore had failed to carry its burden in demonstrating that its Notice of Removal was timely filed. Recognizing that this was a procedural defect which could be waived by Plaintiffs, the Court stayed the Remand Order to give Plaintiffs an opportunity to waive the procedural defect and elect to remain in federal court.

Defendant argues that the record before this Court at the time the Court issued its Remand Order demonstrated that Defendant had not yet been served with Plaintiffs' Complaint and that the action had been timely removed. In support of its argument, Defendant relies on a statement made to the Court by Plaintiffs in a declaration filed on March 25, 2005. However, the Court issued its Remand Order on March 24, 2005 - one day prior to the date the declaration relied upon by Defendant was filed.[1]

---

[1] Defendant claims that because the Court's Remand Order was not entered until March 29, 2005, the Court was aware of Plaintiffs' filing on March 25, 2005. However, the entry date for a

Initials of Deputy Clerk _sr_

Notwithstanding the fact that Defendant's removal papers contained a procedural defect, in light of Plaintiffs' failure to object to this defect within the thirty day time period set forth in 28 U.S.C. § 1447(c), the Court GRANTS Defendant's *ex parte* Application to Vacate Order to Remand or, Alternatively, to Grant Leave to Amend Notice of Removal. The Court's March 24, 2005 Order remanding this action is hereby VACATED.

## II.   Plaintiffs' Motion for Leave to Amend Complaint and Motion to Remand to State Court

Plaintiff Theodore M. Sokarda had a stroke on or about January 16, 2002 and to date, remains in a vegetative state. At the time Mr. Sokarda suffered the stroke, he was using a prescribed dosage of the drug Vioxx. According to Plaintiffs, they filed their Complaint against Defendant, the manufacturer of Vioxx, in state court on January 14, 2005 without serving the Complaint on Defendant, "to preserve their statutory claim." Plaintiffs' Motion to Amend at 3. Plaintiffs claim that after the Complaint was filed, counsel for Plaintiffs continued to investigate the companies which sold, distributed and marketed Vioxx with the intent of amending the Complaint to add additional parties once the investigation had been completed. Despite the fact that Defendant had not yet been served with the Complaint, Defendant removed the action to this Court on February 23, 2005 before Plaintiffs had the opportunity to amend their Complaint to add additional defendants.

In their current Motion for Leave to Amend Complaint, Plaintiffs seek leave to add McKesson Corporation and Amerisourcebergen Drug Corporation (the "Distributor Defendants") as defendants in this action. Plaintiffs are both citizens of California. McKesson Corporation is a Delaware Corporation with its principal place of business in California, and is therefore a citizen of both Delaware and California for the purposes of diversity jurisdiction. *See* 28 U.S.C. § 1332(c). As a result, the joinder of McKesson Corporation as a defendant in this action would destroy diversity and this Court would no longer have subject matter jurisdiction over this action. *See, e.g., Strawbridge v. Curtiss*, 7 U.S. 267 (1806).

Pursuant to 28 U.S.C. § 1447(e), "[i]f after removal the plaintiff seeks to join additional defendants whose joinder would destroy subject matter jurisdiction, the court may deny joinder, or permit joinder and remand the action to the State court." 28 U.S.C. § 1447(e). "When deciding whether to permit joinder under § 1447(e), a court should consider: (1) whether the party sought to be joined is needed for just adjudication and would be joined under Federal Rule of Civil Procedure 19(a); (2) whether the statute of limitations would prevent the filing of a new action against the new defendant should the court deny joinder; (3) whether there has been unexplained delay in seeking the joinder; (4) whether the joinder is solely for the purpose of defeating federal jurisdiction; and (5) whether the claim against the new party seems valid." *Clinco v. Roberts*, 41 F. Supp. 2d 1080, 1086 (C.D. Cal. 1999) (citing Schwarzer, et al., *California Practice Guide: Federal Civil Procedure Before Trial*, ¶ 2:1078 (TRG 1998)).

---

minute order merely signifies when that order is entered on the docket. The Remand Order was actually issued and filed by the Court on March 24, 2005.

Initials of Deputy Clerk ___ST___

A.   <u>The extent the new defendants are required for just adjudication</u>

Rule 19 "requires joinder of persons whose absence would preclude the grant of complete relief, or whose absence would impede their ability to protect their interests or would subject any of the parties to the danger of inconsistent obligations." *Clinco*, 41 F. Supp. 2d at 1082; Fed. R. Civ. P. 19(a); *see also CP Nat'l Corp. v. Bonneville Power Admin.*, 928 F.2d 905, 912 (9th Cir. 1991) (A necessary party is one "having an interest in the controversy, and who ought to be made [a] part[y], in order that the court may act on that rule which requires it to decide and finally determine the entire controversy, and do complete justice, by adjusting all the rights involved in it."). "Although courts consider whether a party would meet [Rule] 19's standard for a necessary party, amendment under § 1447(e) is a less restrictive standard that for joinder under [Rule] 19." *IBC Aviation Servs., Inc. v. Compania Mexicana de Aviacion*, 125 F. Supp. 2d 1008, 1011-12 (N.D. Cal. 2000). The standard "is met when failure to join will lead to separate and redundant actions." *Id.* at 1011 (citing *CP Nat'l Corp.*, 928 F.2d at 910).

In their proposed Amended Complaint, Plaintiffs allege that the Distributor Defendants are "wholesale distributors of all Merck & Company, Inc. products, including Vioxx, and, as such, marketed, sold and distributed Vioxx which was ingested by Plaintiff Theodore M. Sokarda." Proposed Amended Complaint at ¶¶ 3-4. Upon review of Plaintiffs' proposed Amended Complaint, the Court finds that failure to join the Distributor Defendants would "lead to separate and redundant actions." Accordingly, this factor weighs in favor of allowing Plaintiffs' amendment under Section 1447(e).

B.   <u>The extent to which a statute of limitations would affect Plaintiffs' ability to bring a separate suit</u>

Plaintiffs do not argue that a new action against the Distributor Defendants would be time-barred. Accordingly, this factor does not support amendment under Section 1447(e).

C.   <u>The timeliness of the proposed amendment</u>

In their Motion to Amend, Plaintiffs represent that they chose not to serve Defendant Merck with the Complaint immediately after filing this action in state court because they were continuing to research potential claims against additional defendants, and that they only filed their Complaint when they did to "to preserve their statutory claim." Plaintiffs' Motion to Amend at 3. Defendant Merck learned of the action and removed the action to this Court prior to service of the Complaint and before Plaintiffs had the opportunity to make those intended amendments to their Complaint. Once Defendant Merck removed the case, Plaintiffs did not delay in bringing their Motion to Amend, which was filed one month after the date of removal. Accordingly, there was no unexplained delay in seeking to add the additional defendants, and this factor weighs in favor of allowing Plaintiffs' amendment under Section 1447(e).

Initials of Deputy Clerk _er_

**D.**    <u>Motive for joinder</u>

Defendant claims that Plaintiffs' only motivation for attempting to join the Distributor Defendants is to "destroy diversity and force remand." Defendant's Opposition to Motion to Amend at 3. In support of its claim, Defendant cites to the fact that Plaintiffs did not attempt to join the Distributor Defendants until one month after Defendant removed this action to this Court. Defendant's argument is entirely disingenuous in light of the actions taken thus far by Defendant in this case. Defendant learned of this action prior to service of the Complaint, and then removed the case and immediately filed an answer, essentially stripping Plaintiffs of the right to amend as a matter of course before a responsive pleading was filed. Moreover, Defendant's argument fails to account for Plaintiffs' explanation that they were continuing to investigate potential defendants after filing of the Complaint, and intended to amend and serve their Complaint on all defendants at the conclusion of their investigation. It appears to the Court that Plaintiffs attempted to amend their Complaint to add the Distributor Defendants at the first available opportunity, and that it has in fact been Defendant's, and not Plaintiffs' motives which are questionable. Accordingly, this factor weighs in favor of allowing Plaintiffs' amendment under Section 1447(e).

**E.**    <u>The validity of Plaintiffs' claims against the new defendants</u>

Defendant argues that the Court should not permit Plaintiffs to amend their Complaint because their proposed claims against the Distributor Defendants are legally insufficient. In their proposed Amended Complaint, Plaintiffs allege the following ten claims against all defendants: (1) Negligence; (2) Strict liability (failure to warn); (3) Strict liability (design defect); (4) Negligent failure to warn; (5) Negligence *per se*; (6) Misrepresentation and suppression; (7) Breach of warranty; (8) Breach of express warranty; (9) Fraud; and (10) Loss of consortium. Defendant Merck contends that all of the foregoing claims against the Distributor Defendants are based on "an alleged failure to warn about the purported risks of Vioxx," and that "under settled California law, a distributor of prescription pharmaceuticals does not have a duty to warn." Defendant's Opposition to Motion to Amend at 4-5.

The Court does not agree with Defendant that the law in California on this issue is "settled." To the contrary, although California courts have ruled that pharmacists cannot be held strictly liable for failure to warn, they have not addressed whether distributors of prescription drugs can be held liable for failure to warn. Accordingly, the Court finds that Plaintiffs have alleged valid claims for relief against the Distributor Defendants in their proposed Amended Complaint and this factor therefore weighs in favor of allowing Plaintiffs' amendment under Section 1447(e)

Based on the Court's analysis of the foregoing factors, Plaintiffs' Motion to for Leave to Amend Complaint is **GRANTED.** Plaintiffs' Amended Complaint, which was lodged on April 22, 2005, shall be filed as of the date of this Order.

Initials of Deputy Clerk  sr

Since the joinder of Defendant McKesson Corporation destroys diversity, this Court no longer has subject matter jurisdiction over this action and Plaintiffs' Motion to Remand to State Court Pursuant to 28 U.S.C. § 1447(e); 28 U.S.C. § 1447(c) is **GRANTED**.[2] This action is hereby **REMANDED** to Orange County Superior Court for lack of subject matter jurisdiction. *See* 28 U.S.C. § 1447(c).

In light of the Court's Order remanding this action to Orange County Superior Court, Defendant's Motion to Stay All Proceedings Pending Transfer Decision by the Judicial Panel on Multidistrict Litigation is **DENIED** as moot.

IT IS SO ORDERED.

The Clerk shall serve a copy of this Minute Order on all parties to this action.

---

[2] In light of the Court's finding that Plaintiffs state potentially viable claims against Distributor Defendants, the Court need not separately address Defendant's argument regarding fraudulent joinder as set forth in its Opposition to Plaintiffs' Motion to Remand.

Page 6 of 6

Initials of Deputy Clerk __sr__

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

MYRNA AMISCH, Individually
and on behalf of all others
similarly situated,

Plaintiff,

v.

MERCK & CO., INC., and
EDWARDS MEDICAL SUPPLY, INC.,

Defendants.

No. 04-CV-847-DRH

### ORDER

HERNDON, District Judge:

      Now before the Court is Defendant Merck & Co., Inc.'s ("Merck) Motion to Stay All Proceedings Pending Transfer Decision by the Judicial Panel on Multidistrict Litigation. (Doc. 7).[1] The motion requests that the Court stay all the proceedings until the Judicial Panel on Multidistrict Litigation hears and rules on Merck's motion to transfer this case, along with some 150-plus other cases involving VIOXX®, to a single court for coordinated pretrial management pursuant to 28 U.S.C. § 1407. Merck's motion states that the MDL is expected to hear Merck's motion sometime in late January 2005.[2]

---

[1] The Court notes that Merck's reply violates the Local Rule 7.1(d) of this judicial district. Merck's reply is 7 pages and under Local Rule 7.1(d) reply briefs shall not exceed 5 pages.

[2] It is worth mentioning that Schedule A attached to the Letter from Michael J. Beck, Clerk of Panel, United States of America Judicial Panel on Multidistrict Litigation, to All Counsel Involved in the Vioxx Products Liability Litigation (Nov. 22, 2004), does not identify this case as one of the

If the Court were to grant Merck's motion and stay this proceeding pending the hearing on whether to form a MDL on the VIOXX® cases, this Court would not be able to address its subject matter jurisdiction over the matter. A review of the complaint indicates that Plaintiff specifically disclaims federal jurisdiction (Doc. 2, pp. 2-3). Further, both counts of Plaintiff's complaint are based on state law– the Illinois Consumer Fraud Act. The United States Court of Appeals for the Seventh Circuit has explicitly held that district courts have the power to decide whether they have subject matter jurisdiction over a matter prior to transfer to the MDL as ruling on its jurisdiction "is a fundamental obligation of all courts of limited jurisdiction." *Illinois Municipal Retirement Fund v. Citigroup, Inc.*, -- F.3d --, 2004 WL 2749864, *7 (7th Cir. Dec. 2, 2004)(affirming United States Chief District Court Judge G. Patrick Murphy of the Southern District of Illinois' remand of a matter for lack of subject matter jurisdiction after the MDL had issued a conditional transfer order but before transmittal of a final transfer order). In *Illinois Municipal Retirement Fund*, the Seventh Circuit stated:

> Though some district courts stay proceedings during the interim following a conditional transfer order, *see, e.g., Bd. of Trs. of the Teachers' Ret. Sys. of the State of Ill. v. WorldCom, Inc.*, 244 F. Supp.2d 900 (N.D. Ill. 2002), this is not required where the court concludes that it lacks subject matter jurisdiction. We will not require a district court that believes that it lacks subject matter jurisdiction over a case to

---

158 actions set for the next Panel Hearing Session in late January 2005. (Doc. 7, Merck's Motion to Stay All Proceedings Pending Transfer Decision by the Judicial Panel on Multidistrict Litigation, Ex. A).

facilitate a transfer under § 1407, a statute that does not itself confer jurisdiction.

*Illinois Municipal Retirement Fund*, 2004 WL 2749864, *7. In the case at bar, the Court notes that a conditional transfer order has not even been entered in this matter – the MDL has yet to hear the motion to *form* a panel to which this matter may or may not be conditionally transferred. Consequently, as this Court has not determined whether it enjoys proper subject matter jurisdiction over this matter, in addition to the fact that the MDL has not even heard Merck's Section 1407 motion, the Court finds it is not prudent or judicially economical for the Court to stay the proceedings herein. *See also, Walson v. Merck & Co.*, No. 04-CV-27-GPM (Chief Judge Murphy denied motion to stay); *Caruso v. Merck & Co.*, NO. 04-CV-759-GPM (Chief Judge Murphy denied motion to stay and granted motion to remand); *Bilbrey v. Merck & Co.*, No. 04-CV-836-MJR (Judge Reagan denied motion to stay); *Sumner v. Merck & Co.*, 04-864-MJR (Judge Reagan denied motion to stay).

Accordingly, the Court **DENIES** Merck's motion to stay. (Doc. 7).

**IT IS SO ORDERED.**

Signed this 22nd day of December, 2004.

/s/  David RHerndon
**DAVID R. HERNDON**
**United States District Judge**

3

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

MYRNA AMISCH, Individually and
on behalf of all others similarly situated,

Plaintiff,

vs.

MERCK & CO., INC. and
EDWARDS MEDICAL SUPPLY, INC.,

Defendants.

No. 04-CV-00847-DRH

### MEMORANDUM AND ORDER

HERNDON, District Judge:

## I. Introduction

On October 5, 2004, Plaintiff Myrna Amisch ("Amisch") initiated this class action suit in the Circuit Court of the Third Judicial Circuit, Madison County, Illinois, against Merck & Co., Inc. ("Merck") and Edwards Medical Supply, Inc. ("Edwards Medical") seeking economic damages arising out of the marketing, distribution, and sale of the prescription drug VIOXX®. **(Doc. 2)**. Plaintiff asserts claims against Merck and Edwards Medical under the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), **815 ILCS 505/2**. Merck timely removed the case to federal court based on this Court's diversity jurisdiction, **28 U.S.C. §§ 1332, 1441. (Doc. 1)**.

Now before the Court is Plaintiff's motion to remand. **(Doc. 11)**. For the reasons set forth below, the Court grants Plaintiff's motion to remand.

## II. The Complaint's Allegations

The Complaint alleges that Plaintiff is a resident of Illinois[1], Merck is a corporation organized under the laws of the State of New Jersey with its principal place of business in New Jersey, and Edwards Medical[2] is a corporation organized under the laws of the State of Illinois with its principal place of business in Illinois. Regarding the amount in controversy, the Complaint expressly states as follows:

> Plaintiff stipulates that she is not seeking and will neither demand nor accept on behalf of any Class member, any recovery in excess of $75,000.00, exclusive of costs and interest. No claim is asserted here for equitable or injunctive relief. . . . Plaintiff and each member of the class have individually incurred damages under the laws of Illinois in an amount less than $75,000. Neither the Plaintiff, nor any member of the class, seek damages exceeding $75,000, nor do their damages individually exceed $75,000, inclusive of interest and attorneys' fees and all relief of any nature sought hereunder. Neither Plaintiff, nor any of the class members, seek any form of 'common' recover [sic], but rather individual recoveries not to exceed $75,000 for any class member, inclusive of interest and attorneys' fees and all relief of any nature sought hereunder. Plaintiff and the class members voluntarily limit their claims to less than $75,000 each.

---

[1] To determine an individual's citizenship for diversity purposes, courts look to the state of the individual's domicile. *Dakuras v. Edwards*, 312 F.3d 256, 258 (7th Cir.2002). Domicile has two elements: (1) physical presence or residence in a state and (2) an intent to remain in the state. *Id.* Based on the allegations in the Complaint, it appears Plaintiff is domiciled in Illinois and therefore is a citizen of Illinois for diversity purposes.

[2] Plaintiff alleges Edwards Medical is a licensed distributor of VIOXX®. (Compl. at ¶ 4). Merck submits the Declaration of David Layton, Senior Director of Order Management Center for Merck, stating Edwards Medical is a distributor of record of Merck products, but has never ordered any VIOXX® from Merck. (Doc. 1, Notice of Removal ¶ 18 & Nov. 17, 2004 Decl. of David Layton ("Layton Decl.") ¶ 2, attached thereto as Exhibit 2; Doc. 15, Merck's Opp. To Pl.'s Mot. To Remand, Ex. 5). Because the Court finds that the amount in controversy requirement has not been satisfied as explained below, this issue is not determinative.

-2-

(Compl. at ¶ 9).

According to the Complaint, in order to obtain a consumer market share of VIOXX®, Merck requested the Food and Drug Administration ("FDA") allow Merck to use a fast track, 6-month approval process for scientific testing on VIOXX®. (Compl. at ¶12). Plaintiff alleges that the fast track, 6-month approval process was inadequate and that Merck knew or should have known that the drug caused an increased risk of clotting, hypertension, stroke and myocardial infarction, but that this information was intentionally suppressed by Defendants in order for Merck to gain significant profits from VIOXX® sales. (Compl. at ¶¶ 16, 18). Plaintiff alleges she and members of the Class would not have purchased VIOXX® had they known of the increased risks of hypertension, stroke, and/or myocardial infarcts. (Compl. at ¶ 22).

With respect to Plaintiff's VIOXX® purchase, Plaintiff alleges she was prescribed VIOXX® and purchased the drug at the Schnucks Pharmacy in Granite City, Illinois, from April 2003 until July 2004. (Compl. at ¶ 24). Plaintiff purchased VIOXX® without knowledge of the facts misrepresented or concealed by Defendants. (Id.) Plaintiff asks to certify a class as follows: "All persons who purchased VIOXX® for personal, family or household purposes in Illinois from May 1, 1999 until it was withdrawn on September 30, 2004." (Compl. at ¶ 25). Plaintiff believes that the class includes hundreds of thousands of members. (Compl. at ¶ 27).

Counts I and II are brought under the ICFA against Merck and Edwards Medical, respectively. Plaintiff alleges as a direct and proximate result of Defendants'

unfair acts and/or practice, Plaintiff and Class Members have suffered damages in an amount equal to the purchase price of VIOXX®. **(Compl. at ¶¶ 48, 63)**. Plaintiff requests "damages, attorneys' fees, their cost of suit, and pre-judgment interest, in an amount less than $75,000.00, per Plaintiff or Class Member." **(Compl., Prayer for Relief, Counts I & II)** Plaintiff also "seeks to disgorge profits made by Defendants for its [sic] failure to inform consumers of the increased risks associated with the use of VIOXX®."[3] **(Compl. at ¶ 22)**

### III. Analysis

Merck removed the case to this Court based on the federal diversity statute, **28 U.S.C. § 1332**. Under **28 U.S.C. § 1441**, removal is proper over any action that could have been filed originally in federal court. However, if the district court lacks subject matter jurisdiction, the action must be remanded to state court pursuant to **28 U.S.C. § 1447(c)**. Courts presume a plaintiff's choice of forum is proper and valid and resolve all doubts regarding jurisdiction in favor of remand. *See Doe v. Allied-Signal, Inc.*, **985 F.2d 908, 911 (7th Cir. 1993)**. The diversity statute requires complete diversity between the parties plus an amount in controversy which exceeds $75,000, exclusive of interest and costs. Complete diversity of citizenship means that "none of the parties on either side of the litigation may be a citizen of a state of which a party on the other side is a citizen." *Howell v.*

---

[3] Plaintiff makes this request in the introductory section of her Complaint. In the same section, Plaintiff also alleges Merck's VIOXX® campaign resulted in more than $2 billion in sales of VIOXX® to consumers in the year 2000 alone. (Compl. at ¶ 19).

-4-

*Tribune Entertainment Co.*, 106 F.3d 215, 217 (7th Cir. 1997) (citations omitted). If either requirement of diversity jurisdiction is lacking, the court must remand the case to state court.

As the party seeking to invoke federal diversity jurisdiction, Merck bears the burden of demonstrating diversity jurisdiction exits. *See NLFC, Inc. v. Devcom Mid-America, Inc.*, 45 F.3d 231, 237 (7th Cir. 1995). A defendant meets this burden by supporting its allegations of jurisdiction with "competent proof," which in the Seventh Circuit requires the defendant to offer evidence which proves "to a reasonable probability that jurisdiction exists." *Chase v. Shop 'N Save Warehouse Foods, Inc.*, 110 F.3d 424, 427 (7th Cir. 1997) (citations omitted).

The status of the case as disclosed by plaintiff's complaint is controlling on the issue as to whether the case is removable. *St. Paul Mercury Indemnity Co. v. Red Cab Co.*, 303 U.S. 283, 291 (1938). If the face of the complaint establishes that the suit cannot involve the necessary amount, the case should be remanded. *Id.* at 291-92. "Accepted wisdom" provides that the plaintiff's evaluation of the stakes must be respected when deciding whether a claim meets the amount in controversy requirement for federal diversity jurisdiction. *Barbers, Hairstyling for Men & Women, Inc. v. Bishop*, 132 F.3d 1203, 1205 (7th Cir. 1997) (citing *St. Paul Mercury*, 303 U.S. at 289). Here, the Complaint contains language that limits the value of Plaintiff's claim and that of each member of the putative class to less than $75,000. (Compl. at ¶ 9). Notwithstanding Plaintiff's disclaimer, Merck argues that

Plaintiff's claim meets the $75,000 threshold.

Merck argues that Plaintiff's request "to disgorge profits made by Defendants", when considered in the aggregate, independently satisfies the amount in controversy requirement. The Court disagrees. First, while our circuit has adopted the "either viewpoint" approach (that is, the amount in controversy can be determined from either the plaintiff's or defendant's viewpoint), it has nevertheless maintained that "'[w]hatever the form of relief sought, each plaintiff's claim must be held separate from each other plaintiff's claim from both the plaintiff's and defendant's standpoint.'" *See Del Vecchio v. Conseco, Inc.,* **230 F.3d 974, 977-78 (7th Cir. 2000)**(citing *In re Brand Name Prescription Drugs,* **123 F.3d 599, 610 (7th Cir. 1997)**). Merck's request for the Court to consider Plaintiff's claim in the aggregate violates this rule, particularly when Plaintiff provides an express disclaimer for damages in excess of $75,000 and states she does not seek any form of common recovery or equitable relief. *See Hahn v. PepsiCo, Inc.,* **350 F. Supp.2d 758, 764 (N.D. Ill. 2004)(Moran, J.)("Though disgorged profits may exceed $75,000 in the aggregate, defendant cannot base diversity jurisdiction on aggregate damages in a class action.")** Second, even if the Court were to find aggregation appropriate as Merck suggests, Merck has not attempted to quantify the losses which disgorgement would expose it. *See Rubel v. Pfizer Inc.,* **361 F.3d 1016, 1018 (7th Cir. 2004)**. Put simply, the Court finds that Plaintiff's request for disgorgement does not meet the $75,000 jurisdictional threshold.

Merck also contends that Plaintiff's unspecified request for "damages"

is clearly intended to encompass punitive damages. Merck reasons that punitive damages together with attorneys' fees would take Plaintiff's claims over the $75,000 jurisdictional threshold. The problem with Merck's hypothetical is that it is, just that, a hypothetical. It assumes $6,000 in compensatory damages for each Class Member with no evidence to support its assertion. It also assumes punitive damages are available in this case even without evidence to show its conduct was "outrageous" (a requirement for punitive awards under the Consumer Fraud Act, *see Ekl v. Knecht*, 585 N.E.2d 156, 164 (Ill. App. Ct. 1991)). The theoretical availability of damages is not enough to establish jurisdiction. *See Am. Bankers Life Assur. Co. v. Evans*, 319 F.3d 907, 909 (7th Cir. 2003). Merck bears the burden of coming forward with competent proof to establish the amount of such damages. *See id.* Additionally, the measure of attorneys' fees included in the calculation of the jurisdictional amount is the amount of fees incurred as of the time the complaint is filed. *See Gardynski-Leschuck v. Ford Motor Co.*, 142 F.3d 955, 959 (7th Cir. 1998)("**legal expenses yet to be incurred on the date a suit begins do not create a 'case or controversy' within the meaning of Article III**"). Merck points to nothing to suggest that the fees incurred at the time the suit was filed would carry the amount in controversy over the jurisdictional hurdle.

Finally, Merck argues that Plaintiff's "purported limitation" on damages does not deprive the Court of jurisdiction. Merck is incorrect. A party who seeks only monetary relief and wants to avoid litigating in federal court can avoid this fate by stipulating at the time the suit is filed "that [s]he is not seeking and will neither

-7-

demand nor accept any recovery in excess of $75,000 exclusive of costs and interests." *Workman v. United Parcel Serv., Inc.*, 234 F.3d 998, 1000 (7th Cir. 2000); *see also ANR Pipeline Co. v. 62.026 Acres of Land*, 389 F.3d 716, 718 (7th Cir. 2004)("if the plaintiff commits himself to see no more than $75,000, the petition to remove must be denied."); *In re Shell Oil Co.*, 970 F.2d 355, 356 (7th Cir. 1992)(per curiam)("Litigants who want to prevent removal must file a binding stipulation or affidavit with their complaints.").

While it is true that Illinois does not have a law limiting the plaintiff's recovery to that asked for in the *ad damnum* clause, 735 ILCS § 5/2-604, Plaintiff here expressly stated in her Complaint "that she is not seeking and will neither demand nor accept on behalf of any Class member any recovery in excess of $75,000, exclusive of costs and interest." (Compl. at ¶ 9). Merck has not persuaded the Court that this stipulation should be treated as anything other than a binding judicial admission. *See Soo Line R. Co. v. St. Louis Southwestern Ry. Co.*, 125 F.3d 481, 483 (7th Cir. 1997); *see also Cooper v. Carl A. Nelson & Co.*, 211 F.3d 1008, 1014 (7th Cir. 2000)(stating that an allegation in a party's pleading may be treated by the court as a binding judicial admission); *Taylor v. Monsanto Co.*, 150 F.3d 806, 809 (7th Cir. 1998)(same). The mere theoretical possibility that Plaintiff could later amend her Complaint to seek relief in excess of $75,000 is an insufficient reason to find jurisdiction exists now, when it does not. *See* 28 U.S.C. § 1446(b)(permitting Merck to remove the case from state court

-8-

within one year of the commencement of the action upon an amendment by Plaintiff which establishes diversity jurisdiction). In short, Merck has not demonstrated by competent proof that Plaintiff's complaint meets the $75,000 threshold, therefore this Court lacks subject matter jurisdiction.

### IV. Conclusion

In sum, the Court **GRANTS** Plaintiff's motion to remand for lack of subject matter jurisdiction **(Doc. 11)**, but declines to award Plaintiff costs and expenses, including attorneys' fees, incurred as a result of removal. This case is **REMANDED** to the Circuit Court, Third Judicial Circuit, Madison County Illinois, for lack of subject matter jurisdiction.

**IT IS SO ORDERED.**

Signed this 11th day of March, 2005.

/s/   David RHerndon
**United States District Judge**

-9-

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

ALFRED BRAME,                          )
                                       )
                Plaintiff,             )
                                       )
vs.                                    )    CIVIL NO. 05-034-GPM
                                       )
MERCK & COMPANY, INC., and             )
WALGREENS HOME CARE, INC.,             )
                                       )
                Defendants.            )

## MEMORANDUM AND ORDER

MURPHY, Chief District Judge:

Plaintiff filed this action on December 28, 2004, in state court seeking damages for personal injuries and economic losses suffered as a result of taking the prescription drug Vioxx, which was manufactured, marketed, distributed and/or sold by Defendants to the general public. On January 20, 2005, Merck & Company, Inc. (Merck), removed this action from state court based upon the diversity of citizenship statute, 28 U.S.C. § 1332, arguing that Walgreens Home Care, Inc., is fraudulently joined and, therefore, its Illinois citizenship should be disregarded. Plaintiff filed a motion to remand, in which he points out that before the case was removed, he filed an amended complaint to substitute the proper defendant Walgreen Company, d/b/a Walgreens, for the improperly named Walgreens Home Care, Inc. Both Walgreen Company and Walgreens Home Care, Inc., are Illinois citizens, and there is no substantive difference regarding the allegations made against them. Therefore, for purposes of this Memorandum and Order, the Court will refer to the Illinois corporate Defendant as "Walgreens."

In order for this Court to have diversity jurisdiction under 28 U.S.C. § 1332, the parties must be of diverse citizenship and the amount in controversy must exceed the sum or value of $75,000, exclusive of interest and costs. The burden of proof falls on the party seeking to invoke federal diversity jurisdiction to present "competent proof" that the requirements of § 1332 have been met. *Chase v. Shop 'N Save Warehouse Foods, Inc.*, 110 F.3d 424, 427 (7th Cir. 1997); *see also McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 179 (1936). In deciding whether a defendant has been fraudulently joined, a federal court "must engage in an act of prediction: is there any reasonable possibility that a state court would rule against the non-diverse defendant?" *Poulos v. Naas Foods, Inc.*, 959 F.2d 69, 73 (7th Cir. 1992). As recognized by the Seventh Circuit Court of Appeals in *Poulos*, "[a]n out-of-state defendant who wants to remove must bear a heavy burden to establish fraudulent joinder." *Id.*

Generally, Merck argues that Walgreens has been fraudulently joined because Plaintiff has not alleged a valid cause of action against this Defendant. Specifically, in its notice of removal, Merck summarily states that "Plaintiff alleges that 'Walgreens sold [VIOXX] to plaintiff ... in the regular course of its business' (Compl. ¶ 35) and that Walgreens should be liable for strict products liability, failure to warn, and breach of warranty. (Counts 3, 6, and 11). There is no reasonable basis for predicting that Plaintiff could prevail on her [sic] asserted claims against Walgreens. ... Accordingly, Walgreens is fraudulently joined." (Doc. 1, ¶ 14 (string citation to cases denying remand omitted).)

Before filing his motion to remand, Plaintiff attempted to resolve this issue by drawing Merck's attention to this Court's order in a similar case, *Gallaher, et al. v. Bayer Corporation, et al*, civil number 01-641-GPM, in which the undersigned decided that Walgreen Company was not

fraudulently joined in a case involving the prescription drug Baycol. The Court would also draw Merck's attention to its more recent decision in *Elliott v. Wyeth, Inc., et al.*, civil number 03-037-GPM, another case in which the undersigned decided that Walgreen Company was not fraudulently joined after carefully considering Illinois's so-called "innocent seller" statute and the "learned intermediary doctrine."

After carefully reviewing the papers filed in this case, the Court finds a response to the motion to remand unnecessary. Merck has failed to meet its burden in its notice of removal. The Court is not persuaded by conclusory allegations and citations to opinions that lack precedential value. Moreover, the Court will not allow a case over which it lacks jurisdiction to sit on its docket until a decision is reached by the Judicial Panel on Multidistrict Litigation, especially after the Court of Appeals' decision in *Illinois Municipal Retirement Fund v. CitiGroup, Inc.*, 391 F.3d 844, 851 (7th Cir. 2004) ("We find nothing absurd in district courts individually evaluating their own jurisdiction."). In light of this Court's previous rulings in nearly identical cases, to which Plaintiff alerted Merck, and Merck's utter failure in its notice of removal to satisfy its burden to establish federal jurisdiction, this is not a close case. Plaintiff's motion (Doc. 8) is **GRANTED**, and this action is **REMANDED** to the Twentieth Judicial Circuit Court, St. Clair County, Illinois, pursuant to 28 U.S.C. § 1447(c) for lack of subject matter jurisdiction. Plaintiff's request for fees and costs is granted, and he shall file his application on or before March 14, 2005.

IT IS SO ORDERED.

DATED: 2/17/05

s/ G. Patrick Murphy
G. PATRICK MURPHY
Chief United States District Judge

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

DAVID J. McQUAY,                              )
                                             )
                Plaintiff,                    )
                                             )
vs.                                          )    CIVIL NO. 05-038-GPM
                                             )
MERCK  &  COMPANY,  INC.,  and               )
WALGREEN COMPANY, d/b/a Walgreens,            )
                                             )
                Defendants.                   )

## MEMORANDUM AND ORDER

MURPHY, Chief District Judge:

Plaintiff filed this action in state court seeking damages for personal injuries and economic losses suffered as a result of taking the prescription drug Vioxx, which was manufactured, marketed, distributed and/or sold by Defendants to the general public.  On January 20, 2005, Merck & Company, Inc. (Merck), removed this action from state court based upon the diversity of citizenship statute, 28 U.S.C. § 1332, arguing that Walgreens Home Care, Inc., is fraudulently joined and, therefore, its Illinois citizenship should be disregarded.  Plaintiff filed a motion to remand, in which he points out that the defendant named in this action is Walgreen Company, d/b/a Walgreens, and not Walgreens Home Care, Inc.  Both Walgreen Company and Walgreens Home Care, Inc., are Illinois citizens, and it is clear to the Court that Merck intended to refer in its notice of removal to Walgreen Company, which the Court will refer to hereinafter as "Walgreens."

In order for this Court to have diversity jurisdiction under 28 U.S.C. § 1332, the parties must be of diverse citizenship and the amount in controversy must exceed the sum or value of $75,000,

exclusive of interest and costs. The burden of proof falls on the party seeking to invoke federal diversity jurisdiction to present "competent proof" that the requirements of § 1332 have been met. *Chase v. Shop 'N Save Warehouse Foods, Inc.*, 110 F.3d 424, 427 (7th Cir. 1997); *see also McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 179 (1936). In deciding whether a defendant has been fraudulently joined, a federal court "must engage in an act of prediction: is there any reasonable possibility that a state court would rule against the non-diverse defendant?" *Poulos v. Naas Foods, Inc.*, 959 F.2d 69, 73 (7th Cir. 1992). As recognized by the Seventh Circuit Court of Appeals in *Poulos*, "[a]n out-of-state defendant who wants to remove must bear a heavy burden to establish fraudulent joinder." *Id.*

Generally, Merck argues that Walgreens has been fraudulently joined because Plaintiff has not alleged a valid cause of action against this Defendant. Specifically, in its notice of removal, Merck summarily states that "Plaintiff alleges that 'Walgreens sold [VIOXX] to plaintiff ... in the regular course of its business' (Compl. ¶ 35) and that Walgreens should be liable for strict products liability, failure to warn, and breach of warranty. (Counts 3, 6, and 11). There is no reasonable basis for predicting that Plaintiff could prevail on her [sic] asserted claims against Walgreens. ... Accordingly, Walgreens is fraudulently joined." (Doc. 1, ¶ 14 (string citation to cases denying remand omitted).)

Before filing his motion to remand, Plaintiff attempted to resolve this issue by drawing Merck's attention to this Court's order in a similar case, *Gallaher, et al. v. Bayer Corporation, et al.*, civil number 01-641-GPM, in which the undersigned decided that Walgreen Company was not fraudulently joined in a case involving the prescription drug Baycol. The Court would also draw Merck's attention to its more recent decision in *Elliott v. Wyeth, Inc., et al.*, civil number 03-037-

GPM, another case in which the undersigned decided that Walgreen Company was not fraudulently joined after carefully considering Illinois's so-called "innocent seller" statute and the "learned intermediary doctrine."

After carefully reviewing the papers filed in this case, the Court finds a response to the motion to remand unnecessary. Merck has failed to meet its burden in its notice of removal. The Court is not persuaded by conclusory allegations and citations to opinions that lack precedential value. Moreover, the Court will not allow a case over which it lacks jurisdiction to sit on its docket until a decision is reached by the Judicial Panel on Multidistrict Litigation, especially after the Court of Appeals' decision in *Illinois Municipal Retirement Fund v. CitiGroup, Inc.*, 391 F.3d 844, 851 (7th Cir. 2004) ("We find nothing absurd in district courts individually evaluating their own jurisdiction."). In light of this Court's previous rulings in nearly identical cases, to which Plaintiff alerted Merck, and Merck's utter failure in its notice of removal to satisfy its burden to establish federal jurisdiction, this is not a close case. Plaintiff's motion (Doc. 6) is **GRANTED**, and this action is **REMANDED** to the Third Judicial Circuit Court, Madison County, Illinois, pursuant to 28 U.S.C. § 1447(c) for lack of subject matter jurisdiction. Plaintiff's request for fees and costs is granted, and he shall file his application on or before March 14, 2005.

**IT IS SO ORDERED.**

DATED: 2/17/05

s/ G. Patrick Murphy
G. PATRICK MURPHY
Chief United States District Judge

# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA

MARK TOMLIN and APRIL TOMLIN,

    Plaintiffs,

vs.

MERCK & CO., INC., KEVIN BEDELL, and WALGREEN CO. d/b/a Walgreens,

    Defendants.

Case No. 04-14335-CIV-MOORE

**ORDER**

CLOSED CIVIL CASE

THIS CAUSE came before the Court upon Plaintiffs' Motion to Remand (DE #4) and Merck's Motion to Stay (DE #9).

UPON CONSIDERATION of the Motions, the pertinent portions of the record, and being otherwise fully advised in the premises, the Court enters the following Order.

## MOTION TO STAY

Merck argues that the Court should stay all proceedings, including Plaintiffs' Motion to Remand, pending a decision by the Judicial Panel on Multi-district Litigation ("MDL") regarding whether to establish an MDL Court to hear all Vioxx related cases.[1]  Plaintiffs oppose the Motion to Stay, and ask this Court to rule on their Motion to Remand before deciding whether a stay is appropriate.  While the Court acknowledges that it has discretion to either resolve Plaintiffs' Motion to Remand, or to decline to decide the Motion to Remand and grant Merck's Motion to Stay, the Court chooses to reach the merits of Plaintiffs' Motion.  In doing so the Court notes that other, factually similar cases removed by Merck to federal court based on fraudulent joinder have been remanded.  See Irvin v. Merck & Co., Inc., Case No. 03-80514-CIV-HURLEY; Kozic v.

---

[1] Merck argues that a stay is appropriate because five other Vioxx cases have already been stayed in the Southern District of Florida, and that these decisions "make clear the necessity of a stay here."  Mot. to Stay at 6-7.  However, it appears from a review of those cases that one of them is a class action, and that the plaintiffs in the other four cases did not oppose a stay.  Therefore, contrary to Merck's contentions, these cases do not make clear the necessity of a stay because they present different factual circumstances than the instant case.

1

Merck & Co., Inc., Case No. 8:04-CV-324-T-27TBM (M.D. Fla. Aug. 9, 2004). Merck attempts to distinguish these cases by arguing that, at the time they were remanded, no MDL had been requested. This attempt is disingenuous at best, and only serves to obscure the real issue before this Court of whether Merck should have removed this case based on fraudulent joinder in light of the prior remands in factually similar cases. Accordingly, Merck's Motion to Stay is DENIED and the Court will address the merits of Plaintiffs' Motion to Remand.

## MOTION TO REMAND

### I.    BACKGROUND

Plaintiff originally filed this case on November 5, 2004, in the Circuit Court of the Nineteenth Judicial Circuit in and for St. Lucie County, Florida, Case No. 56-2004-CA-001523. Merck filed a Notice of Removal on December 1, 2004, alleging diversity of citizenship pursuant to 28 U.S.C. § 1332, on the basis that Plaintiffs had fraudulently joined defendant Kevin Bedell, and therefore his Florida citizenship should be ignored for purposes of diversity jurisdiction. Plaintiffs then filed a Motion to Remand, arguing that the joinder of Bedell was not fraudulent, and consequently, this Court lacks subject matter jurisdiction to hear the case.

### II.    LEGAL STANDARD

#### A.    Motion to Remand

A federal district court must remand to state court any case that was removed improperly or without the necessary jurisdiction. Campos v. Sociedad Aeronautica De Medellin Consolidada, S.A., 882 F. Supp. 1056, 1057 (S.D. Fla. 1994). In deciding a motion to remand, a district court "must evaluate the factual allegations in the light most favorable to the plaintiff and must resolve any uncertainties about state substantive law in favor of the plaintiff." Crowe v. Coleman, 113 F.3d 1536, 1539 (11th Cir. 1997). "If there is even a possibility that a state court would find that the complaint states a cause of action against any one of the resident defendants, the federal court

2

must find that the joinder was proper and remand the case to state court." Cooker v. Amoco Oil Co., 709 F. 2d 1433, 1440 (11th Cir. 1983). This strict construction of removal statutes prevents "exposing the plaintiff to the possibility that they may win a final judgement in federal court, only to have it determined that the court lacked jurisdiction..." Crowe, 113 F. 3d at 1538.

### B.    Fraudulent Joinder

Merck's removal of this case to federal court was based upon its claim of fraudulent joinder. When a case is removed based on fraudulent joinder, the " removing party bears the burden of proving that the joinder of the resident defendant was fraudulent." Cabalceta v. Standard Fruit Co., 883 F.2d 1553, 1561 (11th Cir.1989)(citations omitted). The burden on the defendant is a "heavy one." Crowe, 113 F.3d at 1538. In order to satisfy this burden, the defendant must establish either that the jurisdictional facts were fraudulently alleged, or that there is "no possibility that plaintiff can establish any cause of action against the resident defendant." Id. "The fact that the plaintiffs may not ultimately prevail against the individual [non-diverse] defendants ... does not mean that the plaintiffs have not stated a cause of action for purposes of the fraudulent joinder analysis." Pacheco de Perez v. AT&T Co., 139 F.3d 1368, 1380 (11th Cir. 1998). Furthermore, in a fraudulent joinder inquiry, the court is not to weigh the merits of the plaintiffs' claims "... beyond determining whether it is an arguable one under state law." In this analysis, the court is to look at plaintiff's pleadings at the time of removal. Cabalceta, 883 F.2d 1553, 1561.

### III.    DISCUSSION

Plaintiffs argue that a remand is necessary because they have a valid cause of action under Florida law against Bedell, and therefore his citizenship cannot be disregarded. In response, Merck argues that the "issue present here... is whether the pleading was sufficient to allege misrepresentations." Resp. at 18. Accordingly, Merck's arguments against remand, and in support

of removal, are based on the viability of Plaintiffs' complaint, rather than on whether Florida law generally provides for a cause of action against pharmaceutical sales representatives.[2]  As a result, in deciding whether a remand is appropriate, the Court must determine whether Plaintiffs have provided sufficient allegations within their complaint to support any of the claims against Bedell.

Plaintiffs' complaint asserts three causes of action against the non-diverse defendant, Bedell: Count II for negligence, Count III for negligent misrepresentation, and Count IV for fraud. In order for Plaintiffs to prevail on their Motion to Remand, it is only necessary that they state one viable claim under Florida law against Bedell.  Estate of Ayres v. Beaver, 48 F. Supp. 2d 1335, 1342 (M.D. Fla. 1999).

Plaintiffs' negligence claim against Bedell includes the following allegations: (1) that Bedell was a sales representative, detail person, or sales manager employed by Merck to promote, sell, distribute and encourage physicians, including Plaintiff's physician, to prescribe Vioxx;(2) that Bedell had a continuing duty to warn Plaintiff and/or Plaintiff's physician in a timely manner about the potential risks and complications associated with Vioxx; (3) that Bedell knew or should have known that Vioxx caused unreasonably dangerous risks and side effects;(4) that Bedell failed to adequately and appropriately warn prescribing physicians of the significant risks of cardiovascular events associated with the use of Vioxx; (5) that Plaintiff suffered a heart attack in December of 2003; and (6) that such heart attack was the direct and legal result of the negligence of Bedell.  See Pl. Compl. at 2-12.[3]

---

[2] Under Florida law, a pharmaceutical sales representative can be held liable for damages resulting from a patients use of a drug.  See Albertson v. Richardson-Merrell, Inc., 441 So. 2d 1146 (Fla. Dist. Ct. App. 1983)(holding that drug manufacturer and individual who promoted drug to medical profession could be held liable for damages resulting from patients use of drug).

[3] Plaintiffs' complaint contains several additional allegations regarding claims for negligent misrepresentation and fraud. However, because the complaint contains sufficient allegations to support their negligence claim against Bedell, the Court need not address the sufficiency of the additional claims.

In light of these allegations, Plaintiffs have stated an arguable claim for negligence under Florida law against Bedell. As a result, Merck has failed to meet its burden of proving that the joinder of Bedell was fraudulent. Therefore, because Bedell and Plaintiffs are Florida residents, there is not complete diversity and this Court lacks jurisdiction to hear this case.

## IV.    CONCLUSION

Based on the foregoing it is ORDERED AND ADJUDGED as follows:

1) Merck's Motion to Stay (DE #9) is **DENIED**;

2) Plaintiffs' Motion to Remand (DE #4) is **GRANTED**, based on lack of subject matter jurisdiction;

3) This case is remanded to the Circuit Court of the Nineteenth Judicial Circuit in and for St. Lucie County, Florida;

4) In light of Merck's prior notice that Plaintiffs' claim against a pharmaceutical representative was viable under Florida law, Plaintiffs may, pursuant to 28 U.S.C. § 1447(c), move this Court for costs and expenses incurred as a result of Merck's removal;

5) This case is **CLOSED**.

DONE AND ORDERED in Chambers at Miami, Florida, this 18th day of February, 2005.

K. MICHAEL MOORE
UNITED STATES DISTRICT JUDGE

cc:    All counsel of record

5

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
**FRANKFORT**

|  |  |  |
|---|---|---|
| VIRGINIA A. HENDERSHOT, ET AL., | ) | Civil Action No. 3:05-70-JMH |
| RICHARD D. SOUTHWORTH, | ) | Civil Action No. 3:05-73-JMH |
|  | ) |  |
| Plaintiffs, | ) |  |
|  | ) | **ORDER** |
| v. | ) |  |
|  | ) |  |
|  | ) |  |
| MERCK & CO., INC., ET AL. | ) |  |
|  | ) |  |
| Defendants. | ) |  |
|  | ) |  |

\*\*    \*\*    \*\*    \*\*    \*\*

These matters are before the Court on the above-named Plaintiffs' motions to remand their cases to state court. These cases arise out of harm to Plaintiffs allegedly caused by Vioxx, and each complaint alleges product liability claims against Merck and negligence claims against the physicians who prescribed Vioxx to Plaintiffs.[1] All responses and replies having been filed, these matters are now ripe for review.

### I. BACKGROUND

*A.    Procedural Background*

Plaintiffs filed these actions in various state courts, and Defendant Merck removed them, claiming that the Court has subject

---

[1]    Some of these cases also include claims against the physicians' employers, but as these claims are entirely derivative of the claims against the physicians, they need not be considered separately. In addition, Plaintiffs make claims against drug representatives named as John Does. These fictitious defendants will be disregarded for purposes of this motion.

matter jurisdiction based on diversity. *See* 28 U.S.C. § 1441(a); 28 U.S.C. § 1332(a). Plaintiffs are citizens of Kentucky, Merck is a citizen of New Jersey under 28 U.S.C. § 1332(b), and the amount in controversy exceeds the jurisdictional minimum. The physicians named in each of the state-court complaints are citizens of Kentucky, and thus according to Plaintiffs the presence of these non-diverse defendants destroys diversity. Merck contends that the physicians were fraudulently joined solely for the purposes of avoiding federal jurisdiction.

B.     *The Complaints Against Merck*

Plaintiffs make a number of allegations in their complaints, most of which are directed at Merck.[2] Plaintiffs allege that Merck actively concealed the cardiovascular risks of Vioxx from both the medical community and the public at large, and they include a "Vioxx Timeline" that describes the relevant studies, articles, and FDA actions regarding Vioxx. According to the complaints, even before Vioxx was approved, there were both human and animal studies indicating that COX-2 inhibitors increase cardiovascular risks. In March of 2000, Merck revealed the initial results of the Vioxx Gastrointestinal Outcomes Research (the "VIGOR" study), which showed that Vioxx had twice the rate of serious cardiovascular

---

[2]     The complaints are nearly identical, with only the names and some of the dates changed.

events as a comparator drug, Naproxen.[3]

In January of 2001, an FDA advisory panel recommended that Merck change the labeling on Vioxx to reflect the cardiovascular risk, a step that Merck took in April of 2002. In the interim, the Journal of the American Medical Association had published a study again showing an increase in cardiovascular risk as compared to Naproxen, and a number of healthcare providers asked Merck to conduct tests on the cardiovascular risks associated with Vioxx. Eventually, in September of 2004, Merck pulled Vioxx from the market.

Plaintiffs assert that throughout this process Merck both concealed and actively misrepresented the true dangers of Vioxx. The claims asserted against Merck include negligence, strict liability, failure to warn, false advertising, and breach of various warranties.

C. *The Claims Against the Physicians*

The claims against the physicians are negligence claims. Plaintiffs incorporate their history of the emerging knowledge of the dangers of Vioxx and claim that the physicians knew or should have known of the cardiovascular risks, failed to adequately

---

[3]    The complaint does not reveal to whom or in what medium these initial results were revealed. Plaintiffs also allege that when the final results of the VIGOR study appeared in the New England Journal of Medicine, Merck failed to disclose the cardiovascular risk. Although the circumstances of the initial release of data are unclear, at this stage all ambiguities must be resolved in favor of Plaintiffs, as further discussed below.

3

consider those risks, and failed to obtain informed consent. Other than the facts that the named physicians treated Plaintiffs and prescribed Vioxx to them, the only allegations supporting the claims against the physicians are the history of the public knowledge of the dangers of Vioxx. Plaintiffs argue that this is sufficient to state a claim that the physicians knew or should have known of the dangers of Vioxx.

## II. ANALYSIS

A.    *Fraudulent Joinder*

A case can only be removed if it could have been originally brought in federal court, and as there is no federal question, jurisdiction is only proper if the parties are completely diverse and the amount in controversy exceeds $75,000. *See* 28 U.S.C. § 1441(a); 28 U.S.C. § 1332. "[A] party seeking to bring a case into federal court carries the burden of establishing diversity jurisdiction." *Coyne v. Am. Tobacco Co.*, 183 F.3d 488, 493 (6th Cir. 1999) (internal quotation marks omitted).

The only issue is whether the non-diverse physicians were fraudulently joined.[4] The burden is on Merck to show fraudulent

---

[4]    Plaintiffs also argue that removal was defective because Merck failed to obtain the consent of all defendants to removal. While the statutes authorizing removal do not explicitly state that removal can be effected only with the consent of all defendants, the case law is clear that all named defendants must either join in the notice of removal or file notices demonstrating consent to removal. *See, e.g., Brierly v. Alusuisse Flexible Packaging, Inc.*, 184 F.3d 527, 533-34 (6th Cir. 1999). However, a removing defendant need not obtain the consent of parties who are

4

joinder, and as with any dispute over removal, all doubts are to be resolved against removal. *See Brierly v. Alusuisse Flexible Packaging, Inc.*, 184 F.3d 527, 534 (6th Cir. 1999); *Alexander v. Elec. Data Sys. Corp.*, 13 F.3d 940, 949 (6th Cir. 1994). "To prove fraudulent joinder, the removing party must present sufficient evidence that a plaintiff could not have established a cause of action against non-diverse defendants under state law." *Coyne*, 183 F.3d at 493.

The Sixth Circuit has held that "if there is a colorable basis for predicting that a plaintiff *may* recover against non-diverse defendants, th[e] Court *must remand* the action to state court." *Id.* (emphasis added); *see also Jerome-Duncan, Inc. v. Auto-By-Tel, L.L.C.*, 176 F.3d 904, 907 (6th Cir. 1999) ("[T]he inquiry is whether [plaintiff] had at least a colorable cause of action."). Any ambiguities in the relevant state law must be taken in the light most favorable to Plaintiffs. *See Alexander*, 13 F.3d at 949. Thus, the question before the Court is not whether Plaintiffs will prevail at trial on their claims against the physicians. The question is not even whether the Court believes that the physicians were in fact joined to defeat diversity. *See Jerome-Duncan*, 176 F.3d at 907 (holding that a plaintiff's motive in joining a non-

---

fraudulently joined. *See Constant v. Wyeth*, 352 F. Supp. 2d 847, 849 (M.D. Tenn. 2003). Accordingly, whether removal was defective based on a lack of consent is entirely dependent on whether the non-diverse physicians were fraudulently joined, and it need not be addressed separately.

diverse defendant is "immaterial to our determination regarding fraudulent joinder"). The question is whether, resolving all ambiguities in favor of Plaintiffs, Merck has shown that there is no colorable basis for predicting that Plaintiffs could prevail in state court.

Several courts have noted that the standard for a defendant to show fraudulent joinder is even higher than the standard for succeeding on a motion to dismiss under Rule 12(b)(6). *See Little v. Purdue Pharma, L.P.*, 227 F. Supp. 2d 838, 845-46 (S.D. Ohio 2002) (citing *Batoff v. State Farm Ins. Co.*, 977 F.2d 848 (3d Cir. 1992); *Hartley v. CSX Transp, Inc.*, 187 F.3d 422 (4th Cir. 1999)). As the Third Circuit has noted, "it is possible that a party is not fraudulently joined, but that the claim against that party ultimately is dismissed for failure to state a claim upon which relief may be granted." *Batoff*, 977 F.2d at 852. "[T]he benefit of the doubt given a plaintiff as part of the fraudulent joinder inquiry should be more deferential than even that given under Rule 12(b)(6). . . . [A] decision overruling a motion for remand where the defendant is claiming fraudulent joinder connotes that a plaintiff's claim, as to the non-diverse defendants, has no basis in law or reason." *Little*, 227 F. Supp. 2d at 846-47; *see also Batoff*, 977 F.2d at 852 (holding that a party is not fraudulently joined if the claims against them are not "wholly insubstantial and frivolous").

6

Merck makes two principal arguments in support of fraudulent joinder. First, Merck argues that Plaintiffs' claims against the physicians are wholly conclusory. Second, Merck argues that Plaintiffs' claims against the physicians are inconsistent with their allegations against Merck. As the fraudulent joinder inquiry depends on whether Plaintiffs have stated a colorable claim against the non-diverse defendants in state court, *see Coyne*, 183 F.3d at 493, the Court must assess Plaintiffs' complaints in light of Kentucky law, and to this the Court now turns.[5]

B.    *Conclusory Pleadings*

It is no doubt true, as Merck points out, that the complaints are long on allegations of wrongdoing by Merck and short on allegations against the physicians. From this fact Merck would have the Court draw the conclusion that the complaints are so deficient and conclusory that the physicians must be fraudulently joined. Therefore, the Court must determine whether the complaints state sufficient facts to sustain a claim against the doctors under Kentucky law.

"The elements of a medical malpractice claim are generally:

---

[5]    There are pending motions to stay in these cases, and Merck has argued that the issue of fraudulent joinder should be determined after transfer to MDL. However, as the determination of whether the physicians have been fraudulently joined depends on whether Plaintiffs have stated a claim under state law, *see Coyne*, 183 F.3d at 493, the MDL court would have to make fifty separate determinations. Although courts have gone both ways on this issue, this Court believes that it is in the interest of efficiency to rule on the motion to remand before transfer.

(1) duty; (2) breach of duty; (3) causation; and (4) injury." *Gordon v. Kemper*, 2005 WL 678535 at *2 (Ky. App. Mar. 25, 2005); *see also Wheeler v. Baptist Healthcare Sys.*, Inc., 14 Fed. App. 559 (6th Cir. 2001). A physician has a duty to use the same degree of care and skill as would be expected of a reasonably competent physician in similar circumstances. *See Mitchell v. Hadl*, 816 S.W.2d 183, 185 (Ky. 1991). Kentucky recognizes a physician's failure to obtain informed consent as an actionable form of negligence. *See Hawkins v. Rosenbloom*, 17 S.W.2d 113, 118-19 (Ky. App. 1999).

Plaintiffs' complaints allege that the cardiovascular risks associated with COX-2 inhibitors had been shown in both human and animal studies before Vioxx's approval, and that public information about the cardiovascular risks of Vioxx came out, notwithstanding Merck's attempts to conceal the risks, from March of 2000 through the time Vioxx was pulled from the market in September of 2004. According to Plaintiffs, this means that at least at some point during this period, the physicians knew or should have known of the risks of Vioxx and should have disclosed the risks to Plaintiffs. Plaintiffs allege that the physicians prescribed Vioxx and that this was a proximate cause of the harm.

Kentucky's Civil Rules, like the Federal Rules of Civil Procedure, require only that a plaintiff state a claim with sufficient specificity so that defendants receive fair notice of

the claims against them.    As the Kentucky Court of Appeals explained, "[u]nder the theory of 'notice' pleading adopted by the Civil Rules a complaint will not be dismissed for failure to state a claim unless it appears to a certainty that the plaintiff would not be entitled to relief under any state of facts which could be proved in support of his claim.    *It is immaterial whether the complaint states 'conclusions' or 'facts' as long as fair notice is given.*"  *Pierson Trapp Co. v. Peak*, 340 S.W.2d 456, 460 (Ky. 1960) (emphasis added and internal citations omitted); *see also Morris v. Cabinet for Families & Children*, 69 S.W.3d 73, 74 (Ky. 2002) ("The principal objective of a pleading is to give fair notice to the opposing party.").  "[T]he Rules of Civil Procedure with respect to stating a cause of action should be liberally construed and . . . much leniency should be shown in construing whether a complaint . . . states a cause of action."   *Smith v. Isaacs*, 777 S.W.2d 912, 915 (Ky. 1989) .

Vague and conclusory though Plaintiffs' allegations may be, Plaintiffs have met the standard required for pleading negligence. Plaintiffs have alleged a breach of the physicians' duty by failing to know, failing to consider, and failing to inform the patient of the risks of Vioxx as a reasonable physician would have. Plaintiffs have alleged that they were injured and that this injury was caused in part by the physicians' failure to meet their duty.

There are sufficient facts alleged such that the physicians

9

would have fair notice of the claims and be able to frame an answer. A physician could answer by stating that he or she was unaware of the dangers and that a reasonable physician would not have encountered the information described in the complaint until after harm had already befallen their patients. The physician might even be right, but what a reasonable physician would have known is surely a matter for the jury and not a matter for the Court on a motion to remand. As the complaints give the physicians fair notice of the claims against them, they will not be held insufficient merely because their allegations are phrased largely as conclusions rather than as facts. *See Pierson Trapp Co.*, 340 S.W.2d at 460.

Moreover, even if the Court believed that the complaints against the physicians were too conclusory to state a claim, there is a remedy short of finding fraudulent joinder. As Judge Caldwell recently recognized in a well-reasoned opinion rejecting allegations of fraudulent joinder, if a complaint is too vague a defendant's remedy is to seek a more definite statement. *See Asher v. Minn. Mining & Mfg. Co.*, No-04-CV-522, 2005 WL 1593941, at *3 (E.D. Ky. June 30, 2005). In *Asher*, a defendant argued that the complaint lacked specificity in its claims against the non-diverse defendants and therefore that those defendants were fraudulently joined. Judge Caldwell rejected that argument, holding that "[t]he Defendants' proper recourse under Kentucky state law . . . would be

10

to request a more definite statement under CR 12.05. The Complaint would not be dismissed because of the alleged deficiencies."[6] *Id.*; *see also Little*, 227 F. Supp. 2d at 843 (remanding suit against drug manufacturer and non-diverse pharmacies even though "[t]he pleadings are general in their nature; the specifics few").

The Court cannot find that the allegations are so bereft of factual underpinnings that the physicians are fraudulently joined. Reading the complaints in the light most favorable to Plaintiffs, the allegations include facts that go to duty, breach, harm, and causation, and the Court believes that the defendant-physicians have received fair notice of the claims against them. If the physicians feel that the complaints are too conclusory, their remedy is to move for a more definite statement.[7]

---

[6]    In a similar fashion, the District Court for the Southern District of Ohio noted, in response to a claim that parties had been fraudulently joined, that a federal court should not deny remand based on factual deficiencies in the pleadings when the Plaintiffs would have the opportunity to amend their complaints in state court. *See Little*, 227 F. Supp. 2d at 847; Ky. R. Civ. P. 15.01 (following Fed. R. Civ. P. 15(a) and directing that leave to amend "be freely given when justice so requires").

[7]    Merck has noted that this Court has found fraudulent joinder in somewhat similar cases in the past. *See Sires v. Eli Lilly & Co.*, No. 5:05-CV-117, 2005 WL 1239636 (E.D. Ky. May 24, 2005); *Salisbury v. Purdue Pharma, L.P.*, 166 F. Supp. 2d 546 (E.D. Ky. 2001). The complaints in those cases, however, were even more deficient than the complaints in this case. In *Sires*, the complaint failed even to allege that the defendant-physician had prescribed the drug at issue in the action, and in *Salisbury* the complaint did not include an allegation that the defendant pharmacies had sold the drug to the plaintiffs. The complaints in this case at least allege that the physicians prescribed Vioxx.

11

C.    *Inconsistent Pleadings*

Merck also argues that the claims against the physicians are inconsistent with the main thrust of the complaints, which is that Merck engaged in a program of concealing the risks of Vioxx from not only the public but from the medical community as well. According to Merck, if it is true that they concealed this information from the physicians, then it is impossible that Plaintiffs will be able to show that the physicians knew or should have known of the risks.

This argument fails for two reasons. First, giving Plaintiffs the benefit of all doubts, it is not clear that the allegations against Merck are necessarily inconsistent with the allegations against the physicians. It is perfectly plausible that a drug manufacturer could engage in a pattern of concealing information about a drug's risks, and yet that a reasonable physician would still have known of the risks from the information that had come out. Plaintiffs allege that certain information about the risks of Vioxx was publicly known at various times notwithstanding Merck's concealment, and that even aside from specific information about Vioxx, the cardiovascular risks associated with COX-2 inhibitors were known before the approval of Vioxx.

Second, the Kentucky Civil Rules, like the Federal Rules, allow alternative or inconsistent pleadings: "A party may . . . state as many separate claims . . . as he has regardless

12

of consistency." Ky. R. Civ. P. 8.05(2). Several courts have rejected the argument that it is a fatal flaw for a plaintiff to argue that a drug company withheld information from the medical community and at the same time that a physician should have known of the risks of a particular drug. *See, e.g., Collins v. Bacon*, No. 1:05-CV-211, 2005 WL 2429844 at *3 (E.D. Tenn. Sept. 30, 2005); *Lauderdale v. Merck & Co.*, No. 1:01-CV-418, 2002 WL 449423 at *2-3 (N.D. Miss. Feb. 4, 2002). Although other courts have ruled the other way on this issue, this Court does not find that the partial inconsistency in Plaintiffs' complaints means that Plaintiffs do not have a colorable claim against the physicians in state court.

### III. CONCLUSION

Although the complaints in these cases are not models of clarity, and the bulk of the allegations relate to the conduct of Merck, the Court cannot find that they are so deficient as to warrant a finding of fraudulent joinder. The burden on a defendant seeking to prove fraudulent joinder is high, and Merck has not met that burden. Plaintiffs state a claim against the non-diverse physicians that may be colorable in state court, and that is all that they must do for their motion to remand to be granted.

Accordingly, and for the foregoing reasons, **IT IS ORDERED:**

(1) That in **3:05-cv-70**, Plaintiffs' motion to remand [Record No. 8] be, and the same hereby is, **GRANTED**; that all other pending motions be, and the same hereby are, **DENIED AS MOOT**; that this

13

action be **REMANDED** to Franklin Circuit Court.

(2) That in **3:05-cv-73**, Plaintiffs' motion to remand [Record No. 10] be, and the same hereby is, **GRANTED**; that all other pending motions be, and the same hereby are, **DENIED AS MOOT**; that this action be **REMANDED** to Trimble Circuit Court.

This the 22nd day of December, 2005.



Signed By:

_Joseph M. Hood_

**United States District Judge**

14